# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ORIT SKLAR and
RUTH MALHOTRA,

   Plaintiffs,

  v.

G. WAYNE CLOUGH,
individually and in his official capacity
as President of the Georgia Institute of
Technology; GAIL DISABATINO,
individually and in her official capacity
as Dean of Students, et al.,

   Defendants.

CIVIL ACTION NO.
1:06-CV-0627-JOF

## OPINION AND ORDER

This matter is before the court on Plaintiffs' motion for attorney's fees [128].

## I. Background

On April 29, 2008, the court granted in part and denied in part the parties' cross motions for summary judgment. The court found that (1) Plaintiffs' speech code claims had been resolved through mediation, (2) Georgia Tech had altered its speech zone policy without judicial intervention (although on the eve of summary judgment motions), (3) despite the fact that Defendants' student activity fees policies appeared constitutionally deficient, Plaintiffs had failed to link Defendants sued to the allegedly unconstitutional

actions, and (4) Defendants Dean Ray and President Clough in their official and individual capacities had violated the Establishment Clause by favoring one religion over another in the state-associated Safe Space program, although they were entitled to qualified immunity in their individual capacities. The court later denied Defendants' motion for reconsideration.

On May 13, 2008, Plaintiffs filed their motion for attorney's fees requesting $274,483.50 in attorney's fees and $21,494.62 in costs. Plaintiffs supplemented this request on August 26, 2008, to cover the time period from May 13, 2008 to August 26, 2008. This supplemental motion requests an additional $32,701.00 in attorney's fees.

Defendants object to Plaintiffs' motion for attorney's fees and expenses arguing that Plaintiffs had only limited success on one of their four claims in the litigation. Defendants further contend that Plaintiffs exercised poor billing judgment in having too many conferences for "strategy" discussions, as well as too much travel time and time expended on deposition preparation. Finally, Defendants aver that Plaintiffs cannot be reimbursed for meal expenses or for travel expenses associated with overstaffing litigation events. Defendants filed no separate objection to Plaintiff's August 26, 2008 supplemental request for attorney's fees.

Plaintiffs respond that the court should not further reduce the lodestar amount because Plaintiffs have already eliminated 430 hours of their time, or $94,000, based on the exclusion of time entries devoted solely to the issues of the speech code, the motion for

preliminary injunction, the speech zone, and student activity fees. Plaintiffs further aver that the court cannot parse successful from unsuccessful claims because there was a common theory or nucleus of facts in that Defendants were attempting to squelch the First Amendment rights of their students. Finally, Plaintiffs assert that Defendants' tenacious litigation strategy increased the number of hours necessary to expend on the prosecution of the case.

**II. Discussion**

**A. Attorney's Fees**

An application for attorney's fees begins with the basic principle that the court "is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Id.* The court must then consider the reasonable hours expended. The court must exclude "excessive, redundant or otherwise unnecessary" hours. *Id.* at 1301 (citation and quotation omitted). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). That burden includes providing records to the court to "show the time spent on the different claims, and

3

the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*

"However, where the plaintiff prevails on only some of his claims, as is the case here, special considerations come into play. First, the court should calculate the lodestar amount – the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). "Having calculated that amount, the court can then reduce the lodestar to reflect the plaintiff's partial success. If the claims on which the plaintiff did not prevail and the claims on which he did prevail were 'distinctly different claims . . . based on different facts and legal theories,' the court cannot award any fee for services on the unsuccessful claims." *Id.* (quoting *Hensley*). "However, if the unsuccessful and the successful claims 'involve a common core of facts' or are 'based on related legal theories,' the court must compare the plaintiff's overall relief with the number of hours reasonably expended on the litigation." *Id.* (quoting *Hensley*). "Because plaintiff's counsel is required to 'explore every aspect of the case, develop all the evidence and present it to the court,' courts have expansively treated claims as being related.'" *Id.* at 1579. "If the plaintiff obtained 'excellent results,' his attorney should be fully compensated for all time reasonably expended on the litigation." *Id.* at 1578 (quoting *Hensley*). "However, if the plaintiff obtained only 'partial or limited success,' the court may reduce the lodestar

4

amount if it believes that amount is excessive in relation to the plaintiff's relief. That decision rests in the discretion of the district court." *Id.* at 1578-79 (quoting *Hensley*). *See also Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (per curiam) (court may also adjust lodestar amount to "reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit"); *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2001) (in evaluating "success" "court needs to account for vital role private litigation plays in the enforcement of civil rights, the difficulties involved in sustaining those lawsuits, the heightened importance of such lawsuits when the defendant is a public body, and the public benefit that occurs when those lawsuits ultimately vindicate a constitutional right").

Defendants do not challenge the hourly rate of Plaintiffs' counsel and paralegals and the court finds that those rates are reasonable. The court next considers Defendants' challenge to the manner in which Plaintiffs staffed the litigation. The court does agree with Defendants that there were more lawyers involved in this case on Plaintiffs' side than are necessary for this type of litigation and that consequently the amount of conferencing, strategy sessions, and e-mail exchanges becomes excessive. The court does not mean to imply that Plaintiffs' counsel were acting inappropriately, but rather that the manner in which Plaintiffs' counsel's non-profit firm operates results in multiple offices and multiple attorneys, at an additional cost which Defendants should not have to bear. Defendants did

5

AO 72A
(Rev.8/82)

proffer the best example of this problem in their response to Plaintiffs' motion for attorney's fees by noting that for a five-page response to Defendants' motion for additional pages, four separate attorneys of Plaintiffs' worked on the response for a total of 10.4 hours and a cost of $2,708.50. Thus, the court finds that some sort of discount should apply to the lodestar to account for this billing judgment.

The court further recognizes that in *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209 (11th Cir. 2008), in cases of "voluminous billing records," the Eleventh Circuit noted that a "court may make a reasonable across the board reduction in hours instead of engaging in the pick and shovel work necessary to make a more precise determination." *Id.* at 1220 (in approving district court's 16 percent cut in total hours submitted because of vague entries and excessive billing). As Plaintiffs submitted nearly 150 pages in billing records, the court finds there are "voluminous billing records" in this case and the court will make an across-the-board cut of fifteen percent of Plaintiffs' requested attorney's fees to account for the manner in which the case was staffed.

The court now turns to the special considerations attendant in a case where there was only "partial success" for the plaintiffs. The court first determines that this is not a case where Plaintiffs' result can be characterized as "excellent." Defendants are correct that of the four causes of action brought, Plaintiffs only achieved full success on one. Because this

6

is not a case of "excellent result," the court is authorized to further adjust the lodestar to account for the partial success.

As the court has described above, the relevant Eleventh Circuit authority instructs that the court should determine whether the successful and unsuccessful claims are "distinctly different claims . . . based on different facts and legal theories" or whether the claims are related. The Eleventh Circuit also noted that "courts have expansively treated claims as being related." Here, there is no clear way to parse the successful and unsuccessful claims in this litigation. The court views Plaintiffs' theory of the case as having alleged unconstitutional conduct by an institution as it relates to a myriad of First Amendment constitutional rights of its students. The decision-makers involved with issues of student affairs are few and are involved in most of the questionable practices alleged by Plaintiffs. Thus, when you consider the depositions of Deans Sabbatino, Ray, and McDonald, most involved each of the four issues of the litigation. There is no way to determine that only one quarter of any of those depositions was devoted to a "successful" issue and Plaintiffs should be compensated for only that quarter portion. Further, there are always aspects of a litigation that must be undertaken and cannot be apportioned to only one cause of action. For example, Defendants challenge Plaintiffs' right to be reimbursed for seeking pro hac vice admission or filing a motion to substitute lead counsel. Although there is no direct reference to the establishment clause on the billing entries for these issues, it is

obvious to any litigator that these are activities that must be undertaken in order to prosecute a civil claim. There is no basis upon which to deny Plaintiffs reimbursement for these more "general" issues.

The court further notes that it is slightly misleading to consider Plaintiffs as having succeeded on one claim only. But for Plaintiffs having filed their complaint, no institutional changes would have occurred at Georgia Tech. Because Plaintiffs filed their complaint, Georgia Tech was forced to alter the speech code it imposes on its students. Although in the course of negotiating a settlement for that portion of the complaint, Plaintiffs did relinquish their claim to attorney's fees, that does not change the fact that Plaintiffs achieved an altered speech code. Similarly, without Plaintiffs' complaint, Defendants would not have changed their speech zone policy. Again, because Defendants changed that policy on the eve of the due date of summary judgment motions and without judicial intervention, that claim was not technically "successful," but Plaintiffs certainly had to pursue that theory through discovery and prepare for summary judgment on that issue. Without Plaintiffs' complaint, that policy would not have changed. Even more striking is the work Plaintiffs did in bringing to light the manner in which Georgia Tech's student activity fee policy is implemented. In the court's view, Plaintiffs' litigation certainly exposed some serious constitutional flaws in the policy, although the court ultimately was not able to grant Plaintiffs any relief on that issue. Finally, as previously noted, Plaintiffs achieved full success on their Safe

8

Space/establishment clause cause of action. Thus, in considering how to account for Plaintiffs' "partial success," the court is cognizant of the litigation as a whole and the changes Plaintiffs achieved at Georgia Tech. The court finds that in *Villano* the Eleventh Circuit authorizes consideration of these issues when it reminds district courts to consider the nature of civil rights litigation against public institutions.

The court has carefully reviewed Plaintiffs' billing records, as well as Defendants' challenges to various aspects of those records as reflected in exhibits A-F of Defendants' response to Plaintiffs' motion for attorney's fees. Considering all of that information, the court finds it appropriate to reduce Plaintiffs' lodestar amount by thirty-five percent to account for Plaintiffs' partial success.

In raw numbers, then, the court makes the following calculations: Plaintiffs' initial lodestar request was for $274,483.50. The court reduces that amount by fifteen percent for staffing issues, reaching a figure of $233,310.97. The court then makes a further reduction of thirty-five percent for "partial success" to reach $151,652.13. Finally, the court notes that Plaintiffs made a supplemental request of $32,701.00, on August 26, 2008, to cover the time period from May 13, 2008 to August 26, 2008. Defendants did not challenge that request and the court will award it in full, putting the final figure for attorney's fees at $184,353.13.

AO 72A
(Rev.8/82)

**B.     Expenses**

In *ACLU v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999), in the context of 42 U.S.C. § 1988, the court found that where expenses are authorized by statute, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *Id.* at 427 (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)). "Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply." *Dowdell*, 698 F.2d at 1188-89. "The issue of which expenses are properly chargeable to the defendants under section 1988 is not settled by reference to any predetermined list of items. It is governed by the purposes of the governing statute and the nature and context of the specific litigation. The purpose of the Attorney's Fees Award Act is to ensure the effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations." *Id.* at 1189.

> Although the standard for the award of other litigation expenses has not received equally articulate expression, it must be governed by the same principle. Reasonable attorneys' fees under the Act must include reasonable expenses because attorney's fees and expenses are inseparably intertwined as equally vital components of the costs of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award correspondingly.

10

*Id.* at 1190; *see also NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987) ("with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988" and "the standard of reasonableness is to be given a liberal interpretation").

Defendants challenge two main categories of expenses: meals and travel. Defendants ask the court to reduce Plaintiffs' travel reimbursement request of $7,345.90 by sixty-five percent to account for overstaffing of travel trips. In *ACLU v. Barnes*, where the court determined that the presence of more than two attorneys at a particular status conference or demonstration was unnecessary, the court also deducted their travel expenses. *See* 168 F.3d at 438-39. The court finds that the same reduction applied in attorney's fees for staffing issues should also apply for staffing issues on travel. Therefore, the court will reduce the $7,345.90 travel expenses request by fifteen percent for a reimbursable figure of $6,244.01. Finally, Defendants argue that Plaintiffs are not entitled to reimbursement for travel associated with Plaintiffs' motion for preliminary injunction because they waived those fees in the settlement of the speech code issue. In the settlement agreement, "Plaintiffs agree[d] not to seek attorney's fees for any work done in preparing the motion for preliminary injunction, the mediation, the motion for enforcement of the settlement, or the hearing held on August 3, 2006, and any preparation therefore." *See* Order, dated Aug. 8,

11

2006. The court agrees that through this settlement, Plaintiffs waived their entitlement to travel reimbursement for the preliminary injunction, and the court will reduce Plaintiffs' travel request by an additional $1,011.72.

Defendants cite only two reported cases to argue that meals are not recoverable expenses. In *Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), the court did not make any specific ruling about the appropriateness of compensation for meal expenses. Rather, in finding that the district court had carefully examined each of counsel's requested expenses, the court merely noted that the district court had eliminated costs for local meals. *Id.* at 1299 n.13. In *Brother v. Miami Hotel Investments, Ltd.*, 341 F. Supp. 2d 1230 (S.D. Fla. 2004), the district court noted in passing that fees such as postage and meals "should be absorbed as general overhead." *Id.* at 1240. In contrast, the Eleventh Circuit did approve in *Dowdell* the reimbursement of meal expenses in a district court section 1988 litigation. *See* 698 F.2d at 1191-92. The court then went on to state that "[w]e now make explicit the standard which has been followed implicitly in the majority of those decisions [including the meal case]. We hold that, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Id.* at 1192. Based on this case law, the court finds that meals are recoverable expenses in section 1988 litigation. As Defendants have not

12

argued that any of the specific meal expenses are unreasonable, the court will not reduce Plaintiffs' request for meal reimbursement.

In sum, therefore, the court reduces Plaintiffs' claim of $21,494.62 for expenses and costs by $2113.61 to $19,381.01.

### III. Conclusion

The court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for attorney's fees [128].

Defendants are DIRECTED to pay to Plaintiffs $184,353.13 in attorney's fees and $19,381.01 in expenses.

**IT IS SO ORDERED** this 23rd day of December 2008.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

13

AO 72A
(Rev.8/82)